IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEANINNE BRUGUIER,

                Plaintiff,

v.                                                          OPINION & ORDER

LAC DU FLAMBEAU BAND OF LAKE SUPERIOR         16-cv-604-jdp
CHIPPEWA INDIANS and HENRY ST. GERMAINE,

                Defendants.

---

JONI R. THEOBALD,

                Plaintiff,

v.

                                                          OPINION & ORDER

LAC DU FLAMBEAU BAND OF LAKE SUPERIOR
CHIPPEWA INDIANS, L.D.F. BUSINESS                         16-cv-605-jdp
DEVELOPMENT CORPORATION, and
HENRY ST. GERMAINE,

                Defendants.

---

      Plaintiffs Jeaninne Bruguier and Joni Theobald assert claims under Title VII and state law, alleging that defendants wrongfully terminated their employment and otherwise violated their rights because of plaintiffs' political activities.

      Defendants Lac du Flambeau Band of Lake Superior Chippewa Indians, L.D.F. Business Development Corporation, and Henry St. Germaine jointly move to dismiss these actions on several threshold issues. Dkt. 13. The court will dismiss all Title VII claims under Federal Rule of Civil Procedure 12(b)(6) for plaintiffs' failure to state a claim. Tribal sovereign immunity precludes their claims, and an Indian tribe is not an employer under

Title VII. The court will decline to exercise supplemental jurisdiction over the state-law claims and dismiss both cases.

ALLEGATIONS OF FACT

To decide a Rule 12(b)(6) motion, the court may consider plaintiffs' complaints, documents referenced in the complaints, documents critical to the complaints, and information subject to judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court draws the following facts from plaintiffs' complaints, charges filed with the EEOC, right-to-sue letters, and publicly available charters of tribal corporations.

Defendant Lac du Flambeau Band of Lake Superior Chippewa Indians (the Tribe) is a federally recognized Indian tribe. In the 1930s, the Tribe was reorganized and approved by the Secretary of the Interior pursuant to Section 16 of the Indian Reorganization Act of 1934 (the IRA), 25 U.S.C. § 5123 (originally 25 U.S.C. § 476). Defendant Henry St. Germaine is a former president of the Tribe's council. In 2012, the tribal council established defendant L.D.F. Business Development Corporation (L.D.F. Business Development) pursuant to Article VI, Section 1(o) of the Tribe's constitution. Under L.D.F. Business Development's charter, the Tribe is the "sole owner." Dkt. 14-6, at 2.

Plaintiffs are former employees of the Tribe. Plaintiff Bruguier was the Tribal Administrator. Theobald was the Director of Gikendaasowin [Knowledge] Education & Workforce Development. The Tribe terminated plaintiffs' employment in 2015.

In July 2015, Theobald announced her candidacy for a seat on the tribal council. Plaintiffs allege that St. Germaine, then-president of the tribal council, arranged a phony internal audit to create a negative perception of Theobald and those associated with

2

Theobald, including Bruguier. The internal auditors obtained confidential documents that pertained to plaintiffs and published those documents on a Facebook page that had over 900 members.

Around the same time, St. Germaine and two other council members met and identified the two highest-paid female managers, Bruguier and Theobald, as candidates for termination. The Tribe later accused plaintiffs of misconduct and terminated their employment, without giving them an opportunity to defend against the accusations. The Tribe terminated male employees too, but the Tribe gave them an opportunity to speak before the tribal council before their termination.

Plaintiffs filed separate charges with the EEOC, each alleging sex discrimination, race discrimination, and retaliation. They filed their charges only against the Tribe and not against the other defendants. Dkt. 14-1, at 3 and Dkt. 14-2, at 3. The EEOC dismissed both charges for lack of jurisdiction on June 3, 2016. Dkt. 14-3, at 1 and Dkt. 14-4, at 1. The same notices that informed plaintiffs of the dismissal informed them of their right to sue. Plaintiffs filed separate complaints with this court on September 1, 2016, and the court consolidated these two cases.

ANALYSIS

The parties debate whether defendants' motion should be treated as a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim. "Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). But as the Seventh Circuit has recently explained, a federal district court "has leeway to choose among threshold grounds for denying

audience to a case on the merits." *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 821 (7th Cir. 2016). Here, the court will construe defendants' motion as a motion to dismiss for failure to state a claim because the issues discussed in this opinion are not jurisdictional.

The standards governing a Rule 12(b)(6) motion are well established. A complaint must contain allegations that, when accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the allegations in a complaint "however true, could not raise a claim of entitlement to relief," the court should grant the motion. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 558).

A. **Title VII claims against the Tribe**

Both plaintiffs claim that the Tribe discriminated against them based on sex, race, and national origin and that the Tribe retaliated against them in violation of Title VII. But their claims fail for two reasons. First, the Tribe's sovereign immunity precludes their claims. Second, the Tribe is not an "employer" under Title VII. Each of these two reasons provides an independent basis for dismissal.

1. **Sovereign immunity**

As a matter of federal law, Indian tribes have sovereign authority traditionally enjoyed by sovereign powers. *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014). Thus, Indian tribes are immune from suit in both state and federal courts unless Congress abrogates the tribe's sovereign immunity or the tribe waives its sovereign immunity. *Wells Fargo Bank, Nat'l Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 689 (7th Cir. 2011) (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998)). In the Seventh Circuit, sovereign immunity is not a jurisdictional issue. *Meyers*, 836 F.3d at 820. The parties here

agree that the Tribe is a federally recognized Indian tribe, and plaintiffs do not contend that Congress abrogated the Tribe's sovereign immunity. Thus, the remaining question is whether the Tribe waived its sovereign immunity.

An Indian tribe's waiver of sovereign immunity must be "clear." *C & L Enter's, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001). It cannot be implied, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978), and any ambiguity must be resolved in favor of immunity, *Meyers*, 836 F.3d at 827 (citing *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448 (2012)); *Nanomantube v. Kickapoo Tribe in Kan.*, 631 F.3d 1150, 1153 (10th Cir. 2011). An Indian tribe can waive its sovereign immunity by, among other means, a tribal resolution or a contract. *Stifel, Nicolaus & Co., Inc. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 202 (7th Cir. 2015).

    a. **Corporate charter**

Plaintiffs contend that the Tribe waived its sovereign immunity because its corporate charter authorizes the Tribe "[t]o sue and be sued in courts of competent jurisdiction within the United States." Dkt. 15, at 5. Defendants, on the other hand, contend that plaintiffs are actually referring to the corporate charter of an entity that is not a party to this case. To understand the parties' argument, some historical background is necessary. In the 1930s, the Secretary of the Interior issued a charter of incorporation for the Tribe under Section 17 of the IRA, which allows Indian tribes to create tribal corporations and conduct business through them. 25 U.S.C. § 5124 (originally 25 U.S.C. § 477). Dkt. 16-1, at 1.[1] The Tribe ratified the charter and established a Section 17 corporation in 1937. *Id.*

---

[1] The court may take judicial notice of this corporate charter because it is publicly available at the Library of Congress and the National Indian Law Library. *See Geinosky*, 675 F.3d at 745 n.1; Library of Congress, American Indian Constitutions and Legal Materials: US North

But the Tribe and its Section 17 corporation are distinct. *Ramey Const. Co., Inc. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir. 1982) (collecting cases). The former is the government of Lac du Flambeau Band of Lake Superior Chippewa Indians reorganized under Section 16 of the IRA. 25 U.S.C. § 5123 (originally 25 U.S.C. § 476). The latter is a subordinate entity established to do business on behalf of the Tribe under Section 17. 25 U.S.C. § 5123 (originally 25 U.S.C. § 476). Thus, the Section 17 corporation's waiver of sovereign immunity as to itself does not waive sovereign immunity as to the Tribe that established it. *Rosebud Sioux Tribe v. Val-U Const. Co. of S. D., Inc.*, 50 F.3d 560, 563 (8th Cir. 1995) ("'[S]ue and be sued clause' in the Tribe's corporate charter does not operate as a general waiver of the Tribe's immunity from suit."); *see also Ute Distribution Corp. v. Ute Indian Tribe*, 149 F.3d 1260, 1268 (10th Cir. 1998) (collecting cases). Plaintiffs' complaints also make clear that they are suing the Tribe, not the Section 17 corporation. They worked directly for the Tribe, and the Tribe's council terminated their employment. Thus, they clearly indicate that defendant is the Tribe, not the Section 17 corporation. Accordingly, any waiver of sovereign immunity by the Section 17 corporation that is not a party to this case does not waive the Tribe's sovereign immunity.

Even if plaintiffs had sued the Section 17 corporation, not the Tribe, the "sue and be sued" clause quoted by plaintiffs does not show, with the requisite clarity, that the Section 17 corporation waived sovereign immunity. The Seventh Circuit has not decided whether a "sue and be sued" clause in a tribal corporation's charter waives tribal immunity, but as one commentator explains, plaintiffs' position that a "sue and be sued" clause waives sovereign

---

Central, *available at* http://www.loc.gov/law/help/american-indian-consts/us-north-central.php (last visited Feb. 3, 2017); National Indian law Library, Tribal Law Gateway, *available at* http://www.narf.org/nill/triballaw/index.html (Feb. 3, 2017).

immunity is a minority position.[2] Outside the tribal context, the Seventh Circuit and other courts have concluded that similar "sue and be sued" clauses do not waive immunity for instrumentalities of states, foreign nations, and the United States.[3] Although immunity for those instrumentalities may differ from immunity of a tribal corporation, the principles applicable to those instrumentalities are instructive in the tribal context.[4] Applying those principles to the "sue and be sued" clause at hand, the most appropriate reading is that the clause gave the tribal corporation the *power* to waive sovereign immunity as to itself and to litigate in its own name, without actually waiving immunity as to the corporation or the Tribe. *See Garcia*, 268 F.3d at 86.[5]

---

[2] *See* Cohen's Handbook of Federal Indian Law § 7.05 (2012 ed.) (summarizing case law).

[3] *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 561 (2017) (holding that Fannie Mae's "sue-and-be-sued" clause is "most naturally read" to mean that it "permits suit in any state or federal court already endowed with subject-matter jurisdiction"); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (noting that a state does not waive sovereign immunity by enacting a statute that allows a government instrumentality to "sue and be sued" or permits suits against it "in any court of competent jurisdiction."); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000); *Fed. Deposit Ins. Corp. v. Citizens Bank & Tr. Co. of Park Ridge*, 592 F.2d 364, 371 (7th Cir. 1979) (holding that "sue-and-be-sued authority [of the FDIC] does not permit suit outside [the Federal Tort Claims Act] for torts excepted from the coverage of that Act."); *Dayton v. Czechoslovak Socialist Republic*, 834 F.2d 203 (D.C. Cir. 1987) (Ruth Bader Ginsburg, J.) ("[W]e agree that no intelligent waiver of a foreign sovereign's immunity is fairly extracted from endowment of a state trading company with the capacity to sue and be sued.").

[4] *C & L Enter's,* 532 U.S. at 421 nn.3-4 (noting that the law governing foreign sovereign immunity is instructive in the context of tribal sovereign immunity but declining to hold that tribal sovereign immunity is the same as state sovereign immunity); *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 660 (7th Cir. 1996) (considering sovereign immunity under the Federal Torts Claims Act and the Tucker Act); *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 86 (2d Cir. 2001) (applying the principles of state and foreign sovereign immunity to hold that "sue and be sued" clause in a tribal ordinance does not waive sovereign immunity).

[5] This reading of the "sue and be sued" clause is also consistent with the purpose of a Section 17 charter. The purpose of Section 17 of the IRA is to allow Indian tribes to conduct

The corporate charter of L.D.F. Business Development, which is an economic arm of the Tribe, Dkt. 14-6, at 1, casts further doubt on plaintiffs' position because it provides a separate procedure for waiver of sovereign immunity. *Id.*, at 2. Section 6.05 of the L.D.F. Business Development's charter has a similar "sue and be sued" clause, but makes clear that a waiver of sovereign immunity requires a unanimous vote of all of its directors. *Id.* If the "sue or be sued" clause in the Section 17 corporate charter cited in plaintiffs' complaints were a wholesale waiver of sovereign immunity as to the Tribe and all of its affiliated entities, it is difficult to see why the charter of L.D.F. Business Development, which is an arm of the Tribe, would provide a separate procedure for waiving sovereign immunity.

The parties discuss *Sokaogon Gaming Enterprise Corporation*, in which the Seventh Circuit stated that "to agree to be sued is to waive any immunity one might have from being sued," 86 F.3d at 659. There, the Seventh Circuit considered whether a tribal corporation had waived its sovereign immunity in an arbitration agreement, where the tribal corporation had agreed to arbitrate "'claims, disputes or other matters' arising out of or related to the contract." *Id.* The fact that the critical language appeared in an agreement between the two contracting parties left no room for ambiguity. If two contracting parties agree to arbitrate

---

business through the "modern device" of corporations, Clay Smith, *Tribal Sovereign Immunity: A Primer*, 50 Advocate 19, 20 (2007) (quoting Opinion No. M-36515, 65 Interior Dec. 483, 484 (1958)), *accord* William V. Vetter, *Doing Business with Indians and the Three "S"Es: Secretarial Approval, Sovereign Immunity, and Subject Matter Jurisdiction*, 36 Ariz. L. Rev. 169 (1994), and practically speaking, conducting business through those entities entails empowering them to litigate in their own names to enforce contracts. That is, the "sue or be sued" clause is a practical necessity for a functioning Section 17 corporation, just like any other corporation. Indeed, a similar "sue or be sued" clause is included in many other Section 17 corporations. *See* Library of Congress, American Indian Constitutions and Legal Materials, *available at* http://www.loc.gov/law/help/american-indian-consts/index.php (last visited Feb. 3, 2017). Adopting plaintiffs' broad reading the "sue and be sued" clause would mean that all those Section 17 corporations have waived their sovereign immunity. Nothing indicates that Section 17 was meant to force tribal corporations to waive sovereign immunity.

disputes arising from a contract, that shows their clear intention to be bound by their contractual obligations and to be sued pursuant to their agreement. But here, there is no contract or transactional document evincing any intent to be bound by a specifically stated obligation. Rather, the corporate charter generally articulates the powers of the Section 17 corporation. It does not express the Section 17 corporation's consent to be sued in federal court for any and all claims.

Plaintiffs also suggest that courts have already determined that the Tribe had waived its sovereign immunity. But the case cited by plaintiffs, *Stifel,* 807 F.3d 184, actually undermines their position. In *Stifel,* the court held that certain tribal entities associated with the Tribe had waived sovereign immunity in several transactional documents and tribal resolutions that pertained to those transactions. *Id.* at 202. If the Tribe had comprehensively waived its sovereign immunity as to itself and all of its affiliated entities, it would be odd for the court to conclude that the tribal entities in *Stifel* had waived immunity for each one of the individual transactions.

      **b. Tribal ordinance**

Plaintiffs also contend that the Tribe waived its sovereign immunity under Section 47 of the Lac du Flambeau Tribal Code. Section 47 has three subsections. Subsection 102 of Section 47 incorporates various federal labor laws:

> The provisions of the Federal Labor Act, United States Code Title 29, and any rules or orders of any Federal administrative agency promulgated thereunder, are hereby incorporated as tribal law as if fully set forth herein.

Lac du Flambeau Tribal Code § 47.102.[6] The other two subsections provide for a tribal court's jurisdiction to adjudicate violations of Section 47.102 and the Tribe's authority to enact Section 47. *See* Lac du Flambeau Tribal Code §§ 47.101, 103. Nowhere does it say that the Tribe waives sovereign immunity.

Plaintiffs argue that the incorporation of federal labor laws is itself a waiver of sovereign immunity. But that argument has been rejected in a case cited by plaintiffs: as the Tenth Circuit has held, an Indian tribe's promise to provide fair labor standards "in no way constitutes an express and unequivocal waiver of sovereign immunity and consent to be sued in federal court." *Nanomantube*, 631 F.3d at 1153 (quoting *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1289 (11th Cir. 2001)).

Plaintiffs also argue that the reference to the "Federal Labor Act" is ambiguous, and thus it should be construed broadly to include Title VII. But a waiver of sovereign immunity must be clear, and any ambiguity is construed against waiver. *Id.* Not only that, as the preamble of Section 47 indicates, the Tribe adopted Section 47 as part of the settlement in *Reich v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, which concerned the Fair Labor Standards Act. *See* Lac du Flambeau Tribal Code § 47; Case No. 94-cv-259 (W.D. Wis. Mar. 28, 1994), Dkt. 2. Thus, even if the court were to attempt to resolve the ambiguity, plaintiffs' position would be a stretch. The "Federal Labor Act" meant the FLSA, not Title VII.

---

[6] The Lac du Flambeau Tribal Code, cited by plaintiffs, is publicly available. *See* Lac du Flambeau Tribal Code §§ 47.101-03, *available at* http://www.ldftribe.com/pages/23/Court-Ordinances/ (last visited Jan. 26, 2017).

**2. Definition of "employer" under Title VII**

A second reason to dismiss plaintiffs' Title VII claims against the Tribe is that an Indian tribe is not an "employer" under Title VII. Title VII prohibits an "employer" from engaging in unlawful employment practices, including discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and retaliation, 42 U.S.C. § 2000e-3(a). Showing that the defendant is an "employer" under Title VII is an element of a plaintiff's claim. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Title VII unequivocally excludes Indian tribes from the definition of an "employer":

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include . . . an Indian tribe . . . .

42 U.S.C. § 2000e(b). Thus, plaintiffs cannot state a Title VII claim against the Tribe.

Plaintiffs contend that Section 47 of the Lac du Flambeau Tribal Code, discussed above, "subjects" the Tribe to Title VII. Dkt. 15, at 7. But Section 47 does not refer to Title VII. And even if the Tribe had agreed to the substantive requirements of Title VII in Section 47, that would not itself allow plaintiffs to sue the Tribe in federal court. Congress, not an Indian tribe, determines what claims litigants may bring to federal court. *See Johnson v. Choctaw Mgmt./Servs. Enter.*, 149 F. App'x 800, 802 (10th Cir. 2005); *Bales v. Chickasaw Nation Indus.*, 606 F. Supp. 2d 1299, 1307 (D.N.M. 2009).

Plaintiffs also state that the Tribe "expressly consented" to federal labor laws, including 29 C.F.R. § 31.1, because the Tribe received the federal YouthBuild grant. Dkt. 15, at 4. The court takes plaintiffs to mean that the receipt of the federal YouthBuild grant requires compliance with Title VII. But plaintiffs do not explain how the receipt of the

YouthBuild grant would require the Tribe to comply with Title VII, so this undeveloped argument is waived. *See Lust v. Sealy, Inc.*, 243 F. Supp. 2d 908, 919 (W.D. Wis. 2002) ("Arguments not developed in any meaningful way are waived." (quoting *Cent. States, Sw. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999)). Besides, the prohibition against discrimination under 29 C.F.R. § 31.1 has nothing to do with plaintiffs' claims; it deals with Title VI of the Civil Rights Act, not Title VII.

In sum, the Tribe did not waive its sovereign immunity. Neither the "sue and be sued" clause referenced in plaintiffs' complaints nor Section 47 of the Lac du Flambeau Tribal Code waives sovereign immunity. By its terms, Title VII does not apply to Indian tribes. The Tribe's receipt of the federal YouthBuild grant does not establish the Tribe's liability under Title VII. Nor does Section 47. Accordingly, the court will dismiss all Title VII claims against the Tribe.

**B. Title VII claims against St. Germaine**

Plaintiffs assert sex discrimination claims under Title VII against St. Germaine, a former president of the tribal council. But Title VII does not impose liability on managers in their individual capacities. *Passananti v. Cook County*, 689 F.3d 655, 677 (7th Cir. 2012). Indeed, plaintiffs indicate in their opposition brief that they no longer intend to pursue claims against St. Germaine. Dkt. 15, at 2 n.1. Thus, the court will dismiss plaintiffs' Title VII claims against St. Germaine.

**C. Title VII claims against L.D.F. Business Development**

Only Theobald asserts claims against L.D.F. Business Development, and those claims arise under Title VII. The court will dismiss those claims for three reasons.

First, the most fundamental problem with Theobald's complaint is that she is suing L.D.F. Business Development under Title VII, but she does not allege how it harmed her or whether it was actually her employer at all. Aside from her legal conclusions under her causes of action, her *sole* allegation against L.D.F. Business Development is that it was her "joint employer" (and even this single allegation is based on "information and belief"). 16-cv-605, Dkt. 1, ¶ 4. She does not offer any factual allegation in support of this "joint employer" theory. Because she has not alleged "enough to raise a right to relief above the speculative level," the court must dismiss her claims against L.D.F. Business Development. *Twombly*. *See* 550 U.S. at 555. The court also rejects her argument that she is entitled to discovery on her employment relationship with L.D.F. Business Development. Dkt. 15, at 13-14. She has not offered even a minimal showing of why she believes that L.D.F. Business Development was her joint employer or why she could not identify her employers without discovery.

Second, sovereign immunity precludes Theobald's claims. L.D.F. Business Development was established by the Tribe's constitution to promote the economic interests of the Tribe, and the Tribe is its "sole owner." Dkt. 14-6, at 1-2. Thus, L.D.F. Business Development is a "governmental subdivision" of the Tribe and is entitled to sovereign immunity. *See Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 812 (7th Cir. 1993); *Barker v. Menominee Nation Casino*, 897 F. Supp. 389, 393 (E.D. Wis. 1995).[7]

Third, Theobald never filed an EEOC charge against L.D.F. Business Development. Generally, a plaintiff may not assert a Title VII claim against a party that has not been

---

[7] Theobald again contends that she should be allowed to discover the relationship between the Tribe and L.D.F. Business Development. But her own allegations and the documents referenced in her complaint demonstrate that L.D.F. Business Development is a governmental subdivision of the Tribe. Accordingly, the court will deny Theobald's request for discovery.

named in an EEOC charge. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). One exception to this rule is that a plaintiff may still proceed against the unnamed party if the "party has been provided with adequate notice of the charge." *Id.* (quoting *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981). But a plaintiff cannot rely on this exception by making conclusory allegations that she exhausted all administrative remedies. *Id.* at 667. The plaintiff must instead allege enough facts in her complaint to allow the court to infer that the exception should apply. *See Id.* Here, Theobald does not dispute that she never filed an EEOC charge against L.D.F. Business Development. Nor does she allege in her complaint enough facts to infer that L.D.F. Business Development has been given adequate notice. Accordingly, the court will dismiss her claims against the L.D.F. Business Development.

**D.  State-law claims**

Plaintiffs claim defamation, intentional infliction of emotional distress, invasion of privacy, and negligence under state law. They rely on 28 U.S.C. § 1367 for the court's jurisdiction over these state-law claims.

Under 28 U.S.C. § 1367, the court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." But it is "the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental

jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction.").

Here, as noted above, the court will dismiss all Title VII claims in this case. No federal claim remains, and the court sees no reason to depart from the circuit's general rule in this instance. Accordingly, the court will dismiss all state-law claims without prejudice.

ORDER

IT IS ORDERED that:

1. Defendants Lac du Flambeau Band of Lake Superior Chippewa Indians, Henry St. Germaine, and L.D.F. Business Development Corporation's motion to dismiss, Case No. 16-cv-604, Dkt. 13, is GRANTED.

2. These cases are DISMISSED.

3. The clerk of court is directed to close both Case Nos. 16-cv-604 and 16-cv-605.

Entered February 21, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge